IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LAGUNA DAIRY, et al., <br><br> Defendants. | Civil Action No. 22-1135-TMH |

## MEMORANDUM OPINION

William D. Sullivan, SULLIVAN HAZELTINE ALLISON LLC, Wilmington, DE; Andrew J. Henrik, SULLIVAN HAZELTINE ALLISON LLC, Central States Law Department, Rosemont, Ill – attorneys for Central States, Southeast and Southwest Pension Fund; and Charles A. Whobrey, as Trustee.

Rudolf Koch, Jason J. Rawnsley, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; James L. Bromley, Andrew J. Finn, Zachary R. Ingber, SULLIVAN & CROMWELL LLP, New York, NY – attorneys for Defendants Lala Branded Products, LLC, Gilsa Real Estate Co., LLC, Farmland Dairies LLC, Promised Land Dairy, LLC, Sinton Dairy Foods Company L.L.C., and New Laguna, LLC.

November 17, 2023
Wilmington, Delaware

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

On August 30, 2022, Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund, and its present trustee, Charles A. Whobrey, commenced this action against Laguna Dairy, S. de R.L. de C.V., Lala Branded Products, LLC, Gilsa Real Estate Co., LLC, Farmland Dairies LLC, Promised Land Dairy, LLC, Sinton Dairy Foods Company L.L.C., and New Laguna, LLC under the Employee Retirement Income Security Act of 1974 (ERISA) for collection of withdrawal liability, interest, and penalties as a result of withdrawal from a multiemployer pension plan. D.I. 1. Before the Court is the Defendants' Motion to Dismiss for failure to state a claim. D.I. 20. For the following reasons, I grant the motion.

**I.   BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true for the purpose of deciding the pending motion. *See Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "In evaluating a motion to dismiss," the court also considers "documents that are attached to or submitted with the complaint . . . matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted).

**A.  Borden's Withdrawal from the Fund and the Settlement Agreement**

Central States, Southeast and Southwest Areas Pension Fund (the Fund) is a multi-employer pension plan, of which Plaintiff Whobrey is a trustee sponsor. D.I. 1 ¶¶ 4–5. Prior to November 2014, non-parties Borden Dairy Ohio and Borden

1

Transport Ohio (collectively, Borden) were parties to collective bargaining agreements that required each to contribute to the Fund on behalf of certain of their employees. D.I. 1 ¶¶ 70–71. On November 9, 2014, Borden decided to cease their participation in the Fund and withdrew from the pension plan. D.I. 1 ¶ 71.

Under the Multi-employer Pension Plan Amendments Act of 1980 (MPPAA), when an employer withdraws from a multi-employer pension plan, the plan's sponsor must set forth withdrawal liability and notify the withdrawing employer of that liability. 29 U.S.C. § 1382. In January 2015, the Fund sent Borden a notice and demand setting forth a withdrawal liability assessment to be discharged in a lump sum of $41,634,085.54 or in 240 monthly payments of $199,647.14 due from February 1, 2015 through January 1, 2035. D.I. 1 ¶ 73. In March 2015, Borden requested a review of the assessment and subsequently initiated arbitration to contest the assessment. D.I. 22 Ex. 1 at 2. During this interim period from February 2015 through August 2016, Borden made monthly payments of $199,647.14 according to the Fund's original assessment. D.I. 22 Ex. 1 at 2.

In August 2016, Borden and the Fund entered into a settlement agreement (the Settlement Agreement). D.I. 22 Ex. 1 at 8. Under the Settlement Agreement, the parties agreed to revise the monthly payment amount of withdrawal liability from $199,647.14 to $183,225.00, with the last monthly payment due on January 1, 2035. D.I. 22 Ex. 1 at 3. Borden also agreed to waive any right to request review of—or initiate arbitration in relation to—the revised withdrawal liability assessment. D.I.

22 Ex. 1 at 4. Pursuant to the Settlement Agreement, the previously entered arbitration was dismissed with prejudice. D.I. 22 Ex. 1 at 5.

### B. Defendants

Although Defendants did not participate in the Fund on behalf of their employees, Defendants—except for New Laguna—were allegedly under common control with Borden when it withdrew from the Fund on November 9, 2014. D.I. 1 ¶¶ 67–68, 167. Defendant Laguna Dairy "directly or indirectly owned at least 80% of the total combined voting power of all classes of outstanding stock entitled to vote or at least 80% of the total value of outstanding shares of all classes of stock of non-party Borden Dairy Company." D.I. 1 ¶ 14. Non-party Borden Dairy Company in turn "directly or indirectly owned at least 80% of the total membership interest or at least 80% of the profits" of Defendant Lala Branded Products and non-party National Dairy. D.I. 1 ¶¶ 15, 17. Defendant Lala Branded Products "directly or indirectly owned at least 80% of the total membership interest or at least 80% of the profits interest or capital interest of Defendant Gilsa Real Estate." D.I. 1 ¶ 16. And non-party National Dairy, LLC "directly or indirectly owned at least 80% of the total membership interest or at least 80% of the profits interest or capital interest" of Defendants Farmland Dairies, Promised Land Dairy, Sinton Dairy, and non-party Borden Dairy Company of Ohio, LLC. D.I. 1 ¶¶ 18–22. The below diagram shows the alleged corporate structure.

3



D.I. 21 at 7.

New Laguna was formed under Delaware law in March 2017 and could not have been under common corporate control with Borden when Borden withdrew from the Fund in 2014. D.I. 1 ¶ 83. Instead, New Laguna is allegedly an alter ego of Defendant Laguna Dairy—a U.S.-based entity created to fulfill Laguna Dairy's contractual obligations and hold ownership interests on behalf of Borden. D.I. 1 ¶ 103. When Laguna Dairy sold its 49 percent stake in Borden Dairy Company to a non-party called Acon Investments, LLC pursuant to a Reorganization and Subscription Agreement (the 2017 RSA), Laguna Dairy transferred the remaining 51 percent membership stake to New Laguna. D.I. 1 ¶¶ 80–81, 83; D.I. 1 Ex. A. Laguna Dairy also transferred its ownership interest in Farmland Dairies to New Laguna, even though New Laguna did not provide consideration for that transfer. D.I. 1 ¶¶ 83, 94. New Laguna and Laguna Dairy share the same mailing address, the same

4

attorneys, and many (if not all) of the same officers, directors, and managers. D.I. 1 ¶¶ 96, 99–102. Laguna Dairy was appointed as New Laguna's attorney-in-fact in the 2017 RSA. D.I. 1 ¶ 92.

As part of the 2017 RSA, Laguna Dairy deposited approximately $30 million into a "Reserve Account" to satisfy Borden's obligations to Plaintiffs under the Settlement Agreement. D.I. 1 ¶¶ 86, 89. Laguna Dairy and New Laguna also agreed to indemnify Borden for "any liabilities arising from the failure to pay all [] Withdrawal Liability [to the Fund] . . . when due." D.I. 1 ¶ 91.

### C. The Borden Bankruptcy

On January 5, 2020, Borden petitioned for bankruptcy in the United States Bankruptcy Court for the District of Delaware under Chapter 11 of the Bankruptcy Code. D.I. 1 ¶ 104. Borden made monthly payments of $183,225.00 pursuant to the Settlement Agreement until January 1, 2020 and ceased making monthly payments after filing of the bankruptcy petition. D.I. 1 ¶¶ 74, 76. The Fund sent Past Due Notices to all Defendants except for New Laguna. D.I. 1. ¶ 75. The Fund did not receive any payments from Defendants. D.I. 1 ¶ 76.

During the bankruptcy proceeding, a dispute arose concerning various creditors' rights to the Reserve Account. The bank holding the Reserve Account, PNC Bank, sued Laguna Dairy and others seeking a declaratory judgment that its interest was superior to all other interests. D.I. 1 ¶ 114. Laguna Dairy initially opposed the suit, but later reached a settlement agreement with PNC Bank and others. D.I. 1 ¶ 117. Under the settlement agreement, Borden was permitted to use the Reserve

Account to satisfy debts owed to creditors, other than the Fund, and Laguna Dairy was no longer obligated to indemnify Borden for any payment owed to the Fund in excess of the funds in the Reserve Account. D.I. 1 ¶¶ 117, 124.

The Fund was not a party to the settlement agreement. D.I. 1 ¶ 126. When Borden filed a motion seeking use of the Reserve Account to satisfy other debts, the Fund filed a non-objection statement but explicitly reserved its rights to collect Borden's withdrawal liability from non-bankrupt parties. D.I. 22. Ex. 3. At the conclusion of the bankruptcy proceeding, the Fund received a distribution of $128,576.22 on account of a claim it filed for Borden's withdrawal liability. D.I. 1 ¶ 74.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the

6

reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   DISCUSSION

Plaintiffs allege that Borden owes the Fund withdrawal liability payments under the MPPAA. In particular, the Fund argues that Defendants are jointly and severally liable for Borden's withdrawal liability because they were either under common control with Borden at the time of Borden's withdrawal from the Fund or, in the case of New Laguna, an alter ego of Defendant Laguna Dairy. In their motion to dismiss, Defendants argue that the MPPAA does not provide a statutory cause of action for this type of action; and even if it did, the MPPAA's six-year statute of limitations or the doctrine of laches bars recovery. Defendants also deny that New Laguna is an alter ego of Laguna Dairy. Because the MPPAA does not provide a statutory cause of action to enforce a private settlement agreement, I will grant Defendants' motion to dismiss for failure to state a claim.

#### A. Statutory Causes of Action under the MPPAA

Under the MPPAA, an employer must pay a penalty known as a withdrawal liability when an employer withdraws from a multiemployer pension plan. 29 U.S.C. § 1382. The purpose of imposing a withdrawal liability on an employer is to ensure the pension plan can meet its future obligations to participating employees. *See Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 168 (3d Cir. 2002). If there is a dispute about that liability, the dispute must be resolved through arbitration. 29 U.S.C. § 1401(a)(1). Either the pension plan or employer may

7

initiate arbitration within 60 days from the date notification is sent to the employer. *Id.*

### 1. Plaintiffs Have No Statutory Causes of Action under § 1401(b) of the MPPAA

The MPPAA allows a party to bring a suit in federal district court for the following scenarios: (1) "If no arbitration proceeding has been initiated . . . [t]he plan sponsor may bring an action . . . for collection" after the statutory period to initiate an arbitration has passed, 29 U.S.C. § 1401(b)(1); (2) "Upon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action . . . to enforce, vacate, or modify the arbitrator's award," 29 U.S.C. § 1401(b)(2). In other words, the action under § 1401(b) is available only in cases where the arbitration proceeding has not been initiated within the statutory period or has been completed. It is not available where the arbitration proceeding has been initiated, but not completed, as is true here.

The Complaint alleges that the Fund sent the withdrawal liability assessment in January 2015; Borden timely initiated arbitration to contest that assessment; and the arbitration was dismissed with prejudice pursuant to the Settlement Agreement in August 2016. Because the arbitration proceeding was timely initiated in this case but never completed, the statutory cause of action under § 1401(b) is not available here. Nonetheless, Plaintiffs argue that this action falls under the first type of action because the Settlement Agreement created a *revised* withdrawal liability assessment for which "no arbitration proceeding has been initiated."

The MPPAA allows the Fund to revise the original withdrawal liability assessment if the employer requests a formal review of the assessment, and the sponsor of a pension fund issues a formal notice with a decision and the basis for that decision. 29 U.S.C. § 1399(b)(2). If the Fund followed these § 1399(b)(2) procedures in revising the original withdrawal liability assessment, then it would have been possible to initiate an arbitration proceeding on the revised assessment. But the Fund did not do so here. After receiving the liability assessment, Borden requested a review of that withdrawal liability calculation, but the Fund did not issue a formal notice with a decision; instead, the matter was submitted to arbitration. When the Settlement Agreement allegedly "revised" the payment schedule, the Fund did not provide any basis for that decision. Because the revision of the payment schedule in the Settlement did not follow the procedures specified in § 1399(b)(2), it cannot serve as the withdrawal liability assessment for which the action under § 1401(b)(1) is available.

Moreover, the statute provides a cause of action to collect amounts based on the "schedule set forth by *the plan sponsor*." 29 U.S.C. § 1401(b)(1) (emphasis added). A private agreement between a plan sponsor and an employer is not a "schedule set forth by the plan sponsor." Here, through the Settlement Agreement, the Fund and Borden agreed to modify the monthly payment schedule set forth by the Fund from $199,647.14 to $183,225.00.

The terms of the Settlement Agreement also make clear that the parties did not intend to reset the MPPAA's dispute resolution procedures. Under the MPPAA,

9

arbitration is the mechanism by which a plan sponsor and an employer resolve disputes over withdrawal liability. *See* 29 U.S.C. § 1401(b)(2). But in the Settlement Agreement, both parties agreed to terminate the arbitration with prejudice, and Borden also agreed to waive its rights to restart arbitration proceedings in the future.

If the Fund intended to preserve its right to enforce the terms of the Settlement Agreement in federal district court, it could have requested the arbitrator to formally enter the award. If it did so, the Fund could have brought this action under § 1401(b)(2), which provides a cause of action "[u]pon completion of arbitration proceeding . . . to enforce, vacate, or modify the arbitrator's award." Instead, the Fund *voluntarily dismissed* the arbitration with prejudice prior to any award. As a result, the award was never formally entered "[u]pon completion of the arbitration proceedings," and there is no award to "enforce, vacate, or modify" under § 1401(b)(2).

Because arbitration was initiated but dismissed with prejudice before completion, § 1401(b) does not provide a statutory cause of action for this suit.

### 2. Plaintiffs Have No Statutory Causes of Action under § 1451(a)(1) of the MPPAA

Plaintiffs also argue that 29 U.S.C. § 1451(a)(1) generally authorizes civil actions to recover unpaid withdrawal liability from employers, even if the action falls outside of § 1401(b). Section 1451(a)(1) reads, "[a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle . . . may bring an action for appropriate legal or equitable relief, or both." "This subtitle" refers to the withdrawal liability subchapter of the MPPAA, 29 U.S.C. §§ 1381-1453, and relevant here, § 1399(c)(5)(A) provides that an

10

employer defaults when it fails to make a withdrawal payment, and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure." Plaintiffs argue that under the plain reading of the statute, § 1451(a)(1) provides a statutory cause of action whenever the plan is "adversely affected by the act or omission of any party" under the withdrawal liability subchapter, and that is satisfied here because Borden defaulted within the meaning of § 1399(c)(5)(A) by failing to make payments according to the Settlement Agreement, and that failure was not cured within 60 days of Borden receiving Past Due Notices from the Fund.

The Supreme Court addressed the same issue in *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California*, 522 U.S. 192 (1997). In *Bay Area*, an employer similarly argued that the cause of action arose under § 1451(a)(1) on the date of the employer's withdrawal from the plan, because "a multiemployer plan is 'adversely affected' whenever an employer withdraws." 522 U.S. at 203. Although the Court acknowledged that "pension plans are adversely affected as a practical matter when an employer withdraws," the Court held that "§ 1451(a)(1) does not provide a cause of action in the air for *any* adverse effect on multiemployer pension funds." *Id.* (quotation marks omitted and emphasis in original). The Court further explained that § 1451(a)(1) "answers only a 'standing' question—*who* may sue for a violation of the obligations established by the Act's substantive provisions." *Id.* (emphasis in original); *see also* 29 U.S.C. § 1451(a) (titled "*Persons* entitled to maintain actions") (emphasis added). The Third Circuit similarly

11

observed that "[s]ection 1451 . . . merely provides jurisdiction over this claim; it does not define or create the claim itself." *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters & Emp'rs Pension Fund*, 847 F.2d 113, 120 (3d Cir. 1988).[1]

Moreover, if, as Plaintiffs argue, § 1451 provides an independent cause of action for any violation under the subtitle, such reading would render § 1401's dispute resolution scheme largely superfluous—an interpretation contrary to fundamental principles of statutory interpretation. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). Under plaintiff's reading, whenever an employer defaults on a withdrawal liability payment, a pension fund could bring a suit in federal court, and entirely bypass the arbitration scheme set up in § 1401.

The Supreme Court has also cautioned that courts should refrain from expanding or implying statutory causes of action where Congress has not done so in express terms. *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017) ("If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist

---

[1] Although not binding on this court, other courts have reached the same conclusion. *See also, e.g.*, *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 510 (6th Cir. 2014) (citing *Bay Area Laundry*); *Reliant Transp., Inc. v. Div. 1181 Amalgamated Transit Union – N.Y. Emps. Pension Fund*, 2019 WL 6050345, at *5 (E.D.N.Y. Nov. 14, 2019) (same); *United Food & Commercial Workers Union-Emp. Pension Fund v. Rubber Assocs., Inc.*, 2015 WL 778781, at *7 (N.D. Ohio Feb. 24, 2015) (same), *aff'd*, 812 F.3d 521 (6th Cir. 2016); *Gerhardson v. Gopher News Co.*, 2009 WL 3242024, at *3 (D. Minn. Sept. 30, 2009) (same); *Sell v. Zions First Nation Bank*, 2006 WL 322469, at *11–12 (D. Ariz. Feb. 9, 2006) (same).

and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." (cleaned up)); *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145 (1985) (declining to imply rights of action in the broader ERISA context). I decline to recognize an implied statutory cause of action where the statute provides a cause of action in express terms and doing so will directly undermine Congress's design.

The two cases that Plaintiffs rely on do not suggest that § 1451(a)(1) creates an independent substantive cause of action under the MPPAA. In *Steelworkers Pension Trust v. Renco Group, Inc.*, the suit was brought to enforce the arbitrator's award, which is authorized under § 1401(b)(2), and "the sole issue presented [in that case was] what interest-rate should be applied to . . . overdue withdrawal liability." 2019 WL 4748055, at *4, *8 (W.D. Pa. Sept. 30, 2019). In *I.U.O.E. Local 68 Pension Fund* v. *Resorts International Hotel, Inc.*, an action resulting in a default judgment against the defendant employer, an employer withdrew from the fund, and the pension fund sent letters to the employer notifying them of its withdrawal liability. 2013 WL 4042451, at *1 (D.N.J. Aug. 8, 2013). The employer did not challenge the pension plan's calculation of withdrawal liability, did not initiate arbitration, and failed to make a single withdrawal liability payment. *Id.* In such case, § 1401(a)(1), not § 1451(a)(1), provides the cause of action because "no arbitration proceeding has been initiated" and "the statutory period to initiate an arbitration has passed."

Plaintiffs point to actions brought under the MPPAA's "pay now, dispute later" scheme as an example of matters which are adjudicated by federal courts but fall

13

*outside* of § 1401(b)'s dispute resolution scheme. Under the MPPAA's "pay now, dispute later" scheme, the employer must pay according to the withdrawal liability schedule set forth by the pension plans, even when those payments become due during the pendency of arbitration. 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."). When an employer fails to make a payment during arbitration, a pension fund may bring an action in federal court to compel payment. *See, e.g.*, *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 141 (3d Cir. 1997); *Robbins v. Lady Balt. Foods., Inc.*, 868 F.2d 258, 261 (7th Cir. 1989); *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir. 1986). Courts created a limited exception to § 1401(b) because § 1399(c)(2) expressly directs employers to begin payments even if the amount of liability or schedule is disputed, and these actions do not interfere with mandated arbitration proceeding. *Galgay*, 105 F.3d at 139 (explaining how this type of action furthers legislative intent—"Congress foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability"). This narrow exception cannot stand for the general proposition that § 1451(a)(1) authorizes a cause of action whenever an employer violates the MPPAA and harms a pension fund.

Even if Plaintiffs are correct that Borden defaulted on its withdrawal liability payments within the meaning of § 1399(c)(5)(A), and the Fund was adversely affected by Borden's default, § 1451(a)(1) does not provide an independent cause of action to

14

collect the withdrawal liability. I decline to adopt a reading that would render the entire section superfluous, and that is entirely inconsistent with *Bay Area*.

Because this action does not fall under one of two scenarios listed in § 1401(b), and because § 1451(a)(1) does not create a general cause of action reaching beyond § 1401(b), Plaintiffs have not stated any viable claim under the MPPAA. Because we find Plaintiffs' claims are not statutorily authorized and thus appropriately dismissed under Rule 12(b)(6) for failure to state a claim, we need not address the remaining arguments.

## IV. CONCLUSION

Plaintiffs have failed to state a claim under the MPPAA for the reasons stated above. Thus, the Court grants Defendants' Motion to Dismiss. D.I. 20. Although this motion is not brought on behalf of Laguna Dairy, a non-appearing defendant, I also dismiss against Laguna Dairy because the complaint fails to state a claim. *See, e.g.*, *Moore v. Solanco School Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020) ("A district court may also sua sponte dismiss a complaint or claims therein against a non-moving defendant 'provided that the complaint affords a sufficient basis for the court's action.'" (quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980))).

15